IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                                 Case Number: 3:13cr14/LAC

BRIAN G. SKINNER
_____/

## FACTUAL BASIS FOR GUILTY PLEA

The defendant admits that if this case were to proceed to trial, the government could prove the following facts.

Brian SKINNER and Jeremy VAUGHN were distributing methamphetamine on a regular basis between at least April 1, 2012 and the date of their arrests herein. VAUGHN acted as a source of methamphetamine for SKINNER in Bakersfield, California. VAUGHN often possessed multiple ounces of methamphetamine along with firearms during this time frame. All of the firearms noted below traveled in interstate commerce.

Between December 26, 2012 and December 27, 2012, in the presence of Bureau of Alcohol, Tobacco, Firearms & Explosives Special Agent (SA) Allen Davis, a confidential informant (hereinafter "CI") conducted approximately five recorded telephone conversations with SKINNER. During the recorded conversations, CI and SKINNER conducted negotiations for methamphetamine. SKINNER agreed to send the methamphetamine to CI in Pensacola, Florida in exchange for $800.00. During a recorded conversation originating on December 27, 2012, SKINNER acknowledged that his source of supply for the methamphetamine was VAUGHN. CI provided SKINNER

FILED IN OPEN COURT THIS
5/1/13
CLERK/U. S. DISTRICT
COURT, NORTH DIST. FLA.

with an address to send the methamphetamine, and instructed SKINNER not to put the package in his name. SKINNER instructed CI to send the money, via Moneygram, to Bakersfield, California, and to put the Moneygram in the name "Brian Skinner."

On December 27, 2012, SA Davis purchased a Moneygram at Advance America in Pensacola, Florida in exchange for approximately one ounce of methamphetamine from SKINNER in Bakersfield. SA Davis tracked the package and subsequently secured the package on December 29, 2012 at the U.S. Post Office located at 1400 W. Jordan Street in Pensacola. The package was addressed to the previously agreed location. The methamphetamine was secreted inside two zip lock bags that were located inside a full jar of peanut butter.

Between December 28, 2012 and December 29, 2012, in the presence of SA Davis, CI conducted approximately six recorded telephone conversations with VAUGHN. During the recorded conversations, CI and VAUGHN conducted negotiations for a Remington 12 gauge shotgun and a half ounce of methamphetamine. VAUGHN agreed to send the Remington 12 gauge shotgun and half ounce of methamphetamine to CI in exchange for $800.00. VAUGHN instructed CI to send the money, via Moneygram, to Bakersfield, California and to put the Moneygram in the name "Jeremy Vaughn." On December 29, 2012, SA Davis purchased a Moneygram at Advance America in Pensacola in exchange for a Remington 12 gauge shotgun from VAUGHN in Bakersfield. SA Davis tracked the package and subsequently secured the package on January 3, 2013 at the Federal Express located at 5903 North W Street in Pensacola. The package was addressed to the previously agreed location. The firearm was secreted inside two pillow cases.

Between December 31, 2012 and January 14, 2013, a series of eight recorded telephone calls were made involving CI, SKINNER, VAUGHN and SA Davis (acting in an undercover capacity). VAUGHN described his vehicle; a 2006 Mercedes. VAUGHN offered to front "four or five" pounds of marijuana to SA Davis if a buyer could be located for the 2006 Mercedes. During a recorded telephone conversation on January 1, 2013, CI and SA Davis spoke to VAUGHN regarding him travelling to Pensacola, Florida with his Mercedes. VAUGHN discussed sending two ounces of methamphetamine and two handguns, referred to as "strappers" and "pistols." During a recorded telephone conversation on January 14, 2013, CI and VAUGHN conducted negotiations for a Desert Eagle firearm in exchange for $1,950. VAUGHN agreed to send the firearm to CI to a specified address in Pensacola. During a recorded telephone conversation on that date, SA Davis discussed the Moneygram status with VAUGHN. Later that day, SA Davis received a telephone call from VAUGHN. During the conversation, VAUGHN stated that he had access to machine guns, specifically "AR-15s." VAUGHN reported that he had a friend who built the machine guns. VAUGHN quoted a price of $2,300 in exchange for one of the firearms. On January 14, 2013, SA Allen Davis purchased a Moneygram at Advance America in Pensacola in the amount of $1,950.00 in exchange for an Israel Military Industries Desert Eagle .44 caliber pistol and half ounce of methamphetamine from VAUGHN in Bakersfield, California.

On January 15, 2013, CI received several telephone calls from SKINNER. SA Davis tracked the package and subsequently secured the package on January 18, 2013 at the U.S. Post Office located at 1400 W. Jordan Street in Pensacola. The Israel Military

3

Industries Desert Eagle .44 caliber pistol and half ounce of methamphetamine were located inside the box. The methamphetamine was secreted inside two zip lock bags that were located inside a full jar of peanut butter. An additional zip lock box was located inside the peanut butter jar that contained three (3) rounds of .44 caliber ammunition.

On January 20, 2013, SA Davis, acting in an undercover capacity, conducted a recorded telephone conversation with VAUGHN. VAUGHN discussed the Israel Military Industries Desert Eagle .44 caliber pistol. VAUGHN apologized that there was a delay in sending the item and blamed SKINNER. VAUGHN offered to sell SA Davis an AR-15 in exchange for $2,300.00. VAUGHN stated that his source could outfit the AR-15s with "tripod," "laser dots," "suppressors," and/or "long barrels, short barrels." SA Davis inquired if it would be difficult to ship one of the AR-15 rifles. VAUGHN responded that he would send it "just like I sent the shotgun up there." VAUGHN stated that he was a felon, and that it was not easy to obtain firearms in California as a felon. Following this conversation, VAUGHN contacted a telephone number associated with Anthony RAMOS.

On January 25, 2013, SA Davis conducted a recorded telephone conversation with VAUGHN. During the recorded conversation, VAUGHN stated that he had recently met with his associate who built the machine guns. VAUGHN stated that the only firearm the individual had available to sell at that time was a Glock pistol with "the fucking numbers filed off." SA Davis asked if this was the "same guy with the ARs," and VAUGHN responded affirmatively. VAUGHN stated, "I'll call him right now and tell him to get all the stuff to get ready to order." Following this undercover conversation, VAUGHN contacted the telephone number associated with Anthony RAMOS.

On January 29, 2013, SA Davis attempted to make telephonic contact with VAUGHN. During the conversation, VAUGHN reported that he had a .38 caliber revolver available for sale for $600.00. VAUGHN also discussed the AR-15. VAUGHN stated half the price of the machine gun ($2,300 total price; $1,150 half) would be required up front. SA Davis agreed to purchase the .38 caliber revolver and placed the order for the AR-15 rifle. VAUGHN then offered to include a quantity of methamphetamine within the shipment of the firearm. Following this conversation, VAUGHN made three attempts to contact the number associated with RAMOS. VAUGHN then made contact with SKINNER. On January 29, 2013, ATF SA Kimberly McGrain purchased a Moneygram at Advance America in Pensacola, Florida. The amount transferred to VAUGHN, through his girlfriend, was $1,750.00 in exchange for a Charter Arms .38 caliber revolver, approximately a fifth ounce of methamphetamine, and a down payment for the machine gun from VAUGHN in Bakersfield.

On January 30, 2013, while conducting surveillance at the Fed Ex Kinko's location at 4001 Stockdale Highway, SA Davis observed VAUGHN, driving his 2006 black Mercedes, arrive at that location. VAUGHN called SA Davis while he was inside the Fed Ex store and asked what name to put on the package. Law enforcement then observed VAUGHN depart the Fed Ex location and travel to the residence of Anthony RAMOS in his 2006 black Mercedes (XXXX Duxbury Court, Bakersfield, California).

SA Davis tracked the package. The package was subsequently secured by ATF SA Peter Bondjuk at the Federal Express located at 5903 North W Street in Pensacola. The Charter Arms .38 caliber revolver and approximately one fifth ounce of

methamphetamine were located inside the box. The methamphetamine was secreted inside wrapped up blue painters tape. The firearm was concealed within torn pages from a Bakersfield phone book and painter's tape.

On January 31, 2013, SA Davis initiated a recorded telephone conversation with VAUGHN. During the recorded telephone conversation, VAUGHN stated that the source building the machine gun had ordered the necessary parts. VAUGHN estimated that the firearm would be ready in between two to three weeks. VAUGHN stated that, "worst case scenario, SKINNER knows him," referring to the source building the AR-15. VAUGHN said if that became an issue, he would "put it in SKINNER's hands." VAUGHN described SKINNER as "that is the one that usually does the mailing for me."

On February 11, 2013, VAUGHN called SA Davis. During the conversation, VAUGHN described the firearm as "automatic" and noted that it was a 9mm. SA Davis inquired as to the manufacturer of the firearm and the price. VAUGHN informed SA Davis that he would call his "guy" to determine the requested information about the firearm. A pen register on VAUGHN's phone reported that he attempted to contact RAMOS promptly after the completion of the conversation with SA Davis. VAUGHN and the number associated with RAMOS subsequently interacted approximately six times before VAUGHN sent SA Davis a responsive text message. VAUGHN sent SA Davis a text message that stated, "It's a Israel original 9mm brand new with owners manual, 2,600." SA Davis informed VAUGHN that he wanted the firearm and would make arrangements to purchase the firearm within a day or two. During a conversation between the two that day, VAUGHN stated that he would instruct his source to "hold on to it."

Following the completion of this conversation, VAUGHN promptly attempted to contact RAMOS (reflected in the aforementioned pen register).

On February 13, 2013, a federal search warrant was served at the residence of VAUGHN, XXXX S. Half Moon Drive, Bakersfield, CA. Once the residence was secured, SA Davis interviewed VAUGHN after providing his *Miranda* rights. VAUGHN acknowledged his understanding of his rights and agreed to answer questions. VAUGHN stated that he first met RAMOS approximately five months earlier. VAUGHN reported that RAMOS was the primary source of firearms and methamphetamine. VAUGHN stated that two of the firearms (the 12 gauge shotgun and the .38 caliber revolver) that he previously shipped to Florida were acquired from RAMOS and SKINNER, respectively. VAUGHN stated that RAMOS knew these firearms were to be ultimately shipped to Florida. VAUGHN also reported that RAMOS knew that VAUGHN was a convicted felon and was prohibited from having firearms. VAUGHN stated that RAMOS is a "pound level dealer of ice" (street terminology for methamphetamine). VAUGHN reported that the first shipment of methamphetamine that he sent to Florida came from RAMOS. VAUGHN admitted that he acquired one quarter ounce (1/4) of methamphetamine, once a week, over the previous two months from RAMOS. VAUGHN estimated that the most methamphetamine he had seen RAMOS with at one time was two pounds. VAUGHN admitted that RAMOS was en route to VAUGHN's residence that day to deliver the previously discussed machine gun that was ultimately to be shipped to Florida to SA Davis.

On February 13, 2013, a federal search warrant was served at the residence of RAMOS, XXXX Duxbury Drive, Bakersfield, CA. SA Davis interviewed RAMOS after providing his *Miranda* rights. RAMOS acknowledged his understanding of his rights and agreed to answered questions. Prior to the execution of the search warrant, a traffic stop had been conducted on RAMOS. RAMOS consented to the search of his vehicle; yielding the seizure of four firearms from the trunk of the vehicle. During the post *Miranda* interview with RAMOS, he admitted that he intended to sell the machine gun to VAUGHN later that day. RAMOS admitted that he knew that this machine gun would subsequently be shipped to Florida. RAMOS admitted that he knew VAUGHN had been to prison numerous times and VAUGHN was a convicted felon, prohibited from possessing firearms. The search of the RAMOS residence yielded the seizure of approximately three ounces of methamphetamine. RAMOS admitted that he sold VAUGHN methamphetamine over the previous two or three months. RAMOS admitted that he was a "pound level dealer" of methamphetamine and that his sources for methamphetamine were members of the Michoacan Cartel.[1]

In total, this conspiracy to distribute methamphetamine exceeded five hundred grams.

---

[1] SKINNER was also arrested on February 13, 2013, and he too provided inculpatory statements after being advised of his *Miranda* rights. That is, SKINNER admitted mailing both methamphetamine and a firearm to Pensacola, Florida on behalf of VAUGHN during the time frame charged herein.

## Elements of the Offense

Eleventh Circuit Pattern Jury Instructions (2010) - Criminal, Offense Instr. 100 & 34.6 (modified to replace "possess" with "ship or transport").

DAVID J. JOFFE
Attorney for Defendant
Florida Bar No. 0814164
One East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33301
(954) 723-0007

04-30-2013
Date

PAMELA C. MARSH
United States Attorney

DAVID L. GOLDBERG
Assistant U.S. Attorney
Northern District of Florida
Member of the Maryland Bar
21 East Garden Street, Ste. 400
Pensacola, Florida 32502
850-444-4000

5/1/13
Date

BRIAN G. SKINNER
Defendant

04-30-2013
Date

9